UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | | |
|---|---|---|
| WEST BEND MUTUAL INSURANCE CO., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | 1:09-cv-832-TAB-TWP |
| vs. | ) | |
| | ) | |
| WILLMEZ PLUMBING, INC. and | ) | |
| ARBOR HOMES, LLC, | ) | |
| | ) | |
| Defendants. | ) | |

**ORDER ON WEST BEND'S MOTION
FOR SUMMARY JUDGMENT AGAINST ARBOR HOMES**

**I.   Introduction**

This case involves raw sewage that discharged into the crawl space of a new home for weeks. The insurance company involved denied coverage, prompting the home builder to believe it got a raw deal. This insurance coverage dispute resulted.

The home builder, Arbor Homes, hired Willmez Plumbing to complete the plumbing work on the new home. Willmez failed to connect the home's sewage line to the main sewage line. Raw sewage discharged for several weeks into the home's crawl space until the homeowners noticed a "horrific smell" and "began feeling ill." Arbor acted quickly to remedy the problem by decontaminating the home and entering into a settlement agreement with the homeowners. But when Arbor—an additional insured on Willmez's insurance policies—turned to West Bend for coverage, it was denied.

While Arbor acted commendably in responding to a messy situation, Arbor entered into a

1

settlement agreement without the consent of West Bend in violation of the insurance policy's voluntary-payments provision. Additionally, the insurance policy contains a fungi and bacteria exclusion that excludes property damage caused by Escherichia coli ("*E. coli*") bacteria contained in the raw sewage. For these reasons, West Bend's motion for summary judgment [Docket No. 113] is granted, and West Bend has no duty to indemnify or defend any of the entities involved.

## II.     Background

Arbor constructs single family residential dwellings. [Docket No. 80, Ex. A.] On February 28, 2005, Arbor hired Willmez to perform plumbing work at a home on Ferrell Drive in Westfield, Indiana. [Docket No. 80 at 2; Docket No. 118 at 2.] Pursuant to the contractors' agreement between Willmez and Arbor, Willmez obtained a general commercial liability insurance policy and an umbrella insurance liability policy from West Bend.[1] [Docket No. 80 at 8; Docket No. 118 at 2.] Willmez then subcontracted the plumbing work to Oscar Alarcon of A & M Plumbing Company. [Docket No. 1 at 3; Docket No. 114, Ex. 2 at 3.]

On March 8, 2007, Kurt and Jay Lorch closed on the purchase of the home on Ferrell Drive. [Docket No. 1 at 3; Docket No. 80 at 3.] In April 2007, the Lorches notified Arbor that there was a "horrific smell within the home" and "they began feeling ill." [Docket No. 1 at 4; Docket No. 80 at 4, 9; Docket No. 81 at 3; Docket No. 114, Ex. 2 at 5, 7–9.] After investigating,

---

[1]Pursuant to the contractors' agreement, Willmez was required to "take out, carry, and maintain the following insurance to protect Contractor and Owner: Comprehensive General Liability insurance to protect against bodily injury and property damage in an amount of not less than $1,000,000 per Occurrence . . . Umbrella Liability Insurance in an amount of not less than $1,000,000 . . . ." [Docket No. 80, Ex. A at 9.] The contractors' agreement also required that the insurance policies "name Arbor Homes, LLC as an additional insured on each of the above referenced liability insurance policies." [*Id.* at 10.]

Arbor discovered that the home's sewage line was not connected to the main sewage line, and raw sewage was being discharged into the crawl space. [Docket No. 1 at 4; Docket No. 80 at 4, 9; Docket No. 81 at 3; Docket No. 114, Ex. 2 at 5, 7–9.] Willmez returned to the home and connected the home's sewage line to the main line. [Docket No. 114, Ex. 2 at 8.] Arbor then hired ACT Environmental Services to conduct an environmental contamination investigation for fecal bacteria. [Docket No. 118 at 5; Docket No. 121 at 5.] The test results came back positive for *E. coli* bacteria. [Docket No. 118 at 5; Docket No. 121 at 5.] Following ACT's recommendation, Arbor hired several contractors to decontaminate the home. [Docket No. 118 at 5; Docket No. 121 at 5–6.]

"By correspondence dated April 18, 2007, the Lorches asserted a claim against Arbor Homes in connection with the '25 days of raw sewage discharged into our crawl space.'" [Docket No. 118 at 7; Docket No. 121 at 5.] Along with the claim, the Lorches made several requests, including that Arbor purchase their home and construct a new home. [Docket No. 118 at 7; Docket No. 121 at 5.] In April and May 2007, Arbor and Willmez began discussing a potential resolution with the Lorches. [Docket No. 121 at 6.] In June 2007, Arbor entered into a settlement agreement with the Lorches agreeing to buy their home, construct a new home, and cover the expenses associated with decontaminating the home and temporarily relocating the Lorches. [Docket No. 115, Ex. 2.]

In October 2007, Arbor requested insurance coverage from West Bend, but was denied coverage pursuant to a fungi and bacteria exclusion, a voluntary-payments provision, and a

completed-operations provision.[2]  [Docket No. 121 at 8; *see also* Docket No. 115 at 2, 10–11; Docket No. 115, Ex. 5; Docket No. 115, Ex. 6; Docket No. 116 at 1; Docket No. 116, Ex. 2.] Also in October 2007, Arbor filed a complaint against Willmez in state court alleging (1) negligence for failure to meet the requisite standard of care in performing plumbing work, (2) breach of contract for failure to perform plumbing in accordance with the terms of their contracting agreement, (3) breach of settlement for failure to fulfill the settlement reached on May 3, 2007, (4) slander of title due to Willmez's filing of a mechanics lien on properties owned by Arbor, (5) breach of contract because Willmez was not a licensed plumber pursuant to the contractors' agreement, and (6) fraud and constructive fraud based on Willmez's misrepresentation that it was a licensed plumber.  [Docket No. 1, Ex. 10.]

These events prompted West Bend to file a complaint with this Court seeking a declaratory judgment that it has no obligation to defend or indemnify Arbor or Willmez under the insurance and umbrella policies.  [Docket No. 1.]  On December 13, 2011, West Bend moved for summary judgment against Arbor [Docket No. 113], arguing that it has no obligation to defend or indemnify Arbor based on a fungi and bacteria exclusion, a voluntary-payments provision, and a completed-operations provision.[3]  [Docket No. 118.]  The Court held oral

---

[2]West Bend's complaint states that on July 31, 2008, Arbor was denied additional insured status. [Docket No. 1 at 5.] At oral argument, West Bend clarified that it mistakenly failed to recognize West Bend as an additional insured when first contacted by Arbor; the parties now agree that Arbor is an additional insured under the policies.

[3]The parties do not dispute that Counts II through VI in the state court action are not subject to coverage. [Docket No. 113 at 3; Docket No. 118 at 24–27.] Rather, Arbor asserts that it is only seeking coverage for property damage arising out of Willmez's alleged negligence (Count I). [Docket No. 121 at 11–12.] Additionally, in light of the Court's conclusion that the voluntary-payments provision and bacteria exclusion apply, the Court does not address the completed-operations provision.

argument on March 15, 2012 [Docket No. 126], and the parties appeared by counsel and presented argument on West Bend's motion for summary judgment. [Docket No. 130.] At oral argument, Arbor informed the Court that it mistakenly failed to file a cross motion for summary judgment on its breach of contract counterclaim.[4]

### III. Discussion

#### A. Fungi and bacteria exclusion

West Bend contends that property damage associated with *E. coli* contamination is excluded from coverage under the fungi and bacteria exclusion. [Docket No. 118 at 29–30.] The fungi and bacteria exclusion excludes coverage for "property damage":

> which would not have occurred, in whole or in part, but for the actual, alleged or threatened inhalation of, ingestion of, contact with, or presence of, any "fungi" or bacteria on or within a building or structure, including its contents, regardless of whether any other cause, event, material or product contributed concurrently or in any sequence to such injury or damage.

[Docket No. 55 at 20.] The exclusion also excludes coverage for:

> [a]ny loss, cost or expense arising out of the abating, cleaning up, removing, containing, treating, detoxifying, neutralizing, remediating or disposing of, or in any way responding to, or assessing the effects of "fungi" or bacteria, by any insured or by any other person or entity.

[*Id.*] Arbor claims that the exclusion renders the policy illusory because "[i]t defies logic that West Bend could sell an insurance policy to a plumber—whose business operations obviously include the installation of, or service upon, underground pipes carrying human waste—but then exclude coverage for claims related to human waste simply because a bacterium such as *E. Coli*." [Docket No. 121 at 15.]

---

[4]Since the breach of contract counterclaim is directly related to West Bend's duty to defend and indemnify, any decision on West Bend's motion necessarily affects Arbor's counterclaim.

Under Indiana law, only if an insurance provision is illusory, will it be enforced to satisfy the reasonable expectations of the insured. *Argonaut Ins. Co. v. Jones*, 953 N.E.2d 608, 623 (Ind. Ct. App. 2011); *Monticello Ins. Co. v. Mike's Speedway Lounge, Inc.*, 949 F. Supp. 694, 699 (S.D. Ind. 1996). A provision is illusory if "a premium was paid for coverage which would not pay benefits under any reasonably expected set of circumstances." *Schwartz v. State Farm Mut. Auto. Ins. Co.*, 174 F.3d 875, 879 (7th Cir. 1999); *Lexington Ins. Co. v. Am. Healthcare Providers*, 621 N.E.2d 332, 339 (Ind. Ct. App. 1993). There are several factors that indicate a provision is illusory. For example, the broader the exclusion, the more likely the exclusion is illusory. *Cincinnati Ins. Co. v. Eastern Atl. Ins. Co.*, 260 F.3d 742, 746 (7th Cir. 2001); *Monticello*, 949 F. Supp. at 702. Additionally, when a "provision in an insurance policy negates the very coverage that the policy purports to provide in the circumstances where the person is liable," it is also likely to be illusory. *Empire Fire & Marine Ins. Co. v. Sargent*, No. 1:04-CV-0021-JDT-TAB, 2005 WL 2476203, at *4 n.2 (S.D. Ind. Oct. 6, 2005). However, if the policy "covers some risk reasonably anticipated by the parties, it is not illusory." *Schwartz*, 174 F.3d at 879; *Neighborhood Hous. Sevs. of Am., Inc. v. Turner-Ridley*, 742 F. Supp. 2d 964, 972–73 (N.D. Ind. 2010).

Although it may be illogical to some extent for a plumber to exclude coverage for bacteria contained in sewage, the policy is not illusory because it provides coverage under several other circumstances. For example, the policy covers improper installation of hot and cold water pipe lines that leak, damaging the home's walls, ceilings, floors, and furniture; improper connection of lines to sinks and tubs, causing similar damage; installing water lines without proper installation, resulting in freezing and busting pipes and related damage; installing

a sewer pipe with inadequate bracing that collapses and damages the work of another trade working on construction of the home; or improper installation of a gas water heater that causes an explosion that kills the home's occupants and destroys the home and its contents. [*See* Docket No. 124 at 7–8 (listing several additional scenarios where insurance coverage applies).] Arbor does not dispute that these scenarios would be covered under the insurance policies. And because the insurance policies cover these numerous other risks reasonably anticipated by the parties, the fungi and bacteria exclusion is not illusory. *Schwartz*, 174 F.3d at 879; *Turner-Ridley*, 742 F. Supp. 2d at 972–73. Accordingly, West Bend is entitled to summary judgment pursuant to the fungi and bacteria exclusion.[5]

    B.    *Voluntary-payments provision*

West Bend also contends that Arbor entered into a settlement agreement in violation of the voluntary-payments provision. [Docket No. 118 at 34.] The provision states that "[n]o insured will, except at that insured's own cost, voluntarily make a payment, assume any obligation, or incur any expense, other than for first aid, without our consent." [Docket No. 1,

---

[5]West Bend cites numerous cases in which courts have applied fungi and bacteria exclusions against the insured. [Docket No. 118 at 29; Docket No. 127 at 1.] The Court does not address these cases since Arbor's argument was solely predicated on the basis that the provision is illusory. For this reason, the Court also does not consider Arbor's tender of supplemental authority filed on March 23, 2012. [Docket No. 131 (citing *State Auto. Mut. Ins. Co. v. Flexdar, Inc.*, No. 49S02-1104-PL–199, 2012 WL 966052 (Ind. Mar. 22, 2012) (discussing ambiguous insurance provisions)).] While *Flexdar* was not decided until after West Bend's motion was fully briefed and oral argument held, nothing prevented Arbor from arguing that the exclusion is ambiguous, especially since other case law was available to potentially support such a position.
*See, e.g.*, *Am. States Ins. Co. v. Kiger*, 662 N.E.2d 945 (Ind. 1996) (discussing ambiguous insurance provisions); *see also Hernandez ex rel. Hernandez v. Foster*, 657 F.3d 463, 487 (7th Cir. 2011) (failing to timely raise an argument results in waiver); *Arlin-Golf, LLC v. Vill. of Arlington Heights*, 631 F.3d 818, 822 (7th Cir. 2011) (same).

Ex. 3 at 21.]  "The purpose of a provision like this is twofold, and is intended to give the insurer the ability to control settlement negotiations with the injured party, and to prevent an [sic] the insured party from conspiring with a third party to receive benefits."  *Am Ins. Co. v. Crown Packaging Intern.*, 813 F. Supp. 2d 1027, 1033 (N.D. Ind. 2011).

Two cases help illustrate the function of a voluntary-payments provision.  In *Dreaded, Inc. v. St. Paul Guardian Insurance Co.*, 904 N.E.2d 1267, 1268 (Ind. 2009), the policyholder waited over three years to notify the insurer of a claim to clean up soil contamination. Addressing the insurance policy's notice provision and whether the insurer had a duty to defend, the Indiana Supreme Court opined that the "function of a notice requirement is to supply basic information to permit an insurer to defend a claim."  *Id.* at 1273.  Thus, the court held that "recoupment of an insured's pre-notice defense costs predicated on an alleged breach of an insurer's duty to defend, the insurer's duty to defend did not arise and prejudice is an irrelevant consideration."  *Id.* at 1268.

Similarly, in *Travelers Insurance Co. v. Maplehurst Farms, Inc.*, 953 N.E.2d 1153, 1159 (Ind. Ct. App. 2011), the court addressed a voluntary-payments provision identical to West Bend's voluntary-payments provision.  *Travelers* held that the insured "cannot recover costs or expenditures that it incurred prior to giving Travelers notice of the underlying environmental claim."  *Id.* at 1160.  The court further explained that "it is apparent that where an insured enters into a settlement agreement without the insurer's consent in violation of a voluntary payment provision, that obligation cannot be recovered from the insurer, and prejudice is irrelevant."  *Id.* at 1161.

It is undisputed that Arbor entered into a settlement agreement with the Lorches in June

2007. [Docket No. 118 at 7–8; Docket No. 121 at 6.] It is also undisputed that Arbor notified West Bend of the Lorches' claims and settlement on October 12, 2007. [Docket No. 121 at 7, 18.] But nothing in the record suggests that West Bend was notified of the claim prior to the June 2007 settlement agreement. Arbor attempts to raise a genuine issue of material fact by asserting that on May 4, 2007:

> Chesney[6] sent correspondence to Willmez making it clear that West Bend should contact Arbor if any additional information was needed regarding a potential resolution with the Lorches. Willmez advised Arbor that Mr. Chesney's May 4, 2007 letter was forwarded to West Bend. Having received no response from West Bend by June 2007, and in order to mitigate damages, Arbor entered into a Settlement Agreement . . . .

[Docket No. 121 at 18 (citing Chesney Aff. ¶¶ 14–16).] West Bend contends that Chesney "has no personal knowledge that Willmez forwarded Arbor Homes' May 4, 2007, letter to West Bend, or that West Bend received the same—he is merely repeating the statement of an out-of-court declarant." [*Id.*] Arbor does not dispute West Bend's claim that Chesney has no personal knowledge of the forwarded letter [*see* Docket No. 125 at 6–9,] and conceded this point at oral argument. Therefore, to the extent that Chesney's affidavit is being used to assert West Bend was on notice, it is inadmissible hearsay.[7] *Smith v. Potter*, 445 F.3d 1000, 1009–10 (7th Cir. 2006) ("The affidavits are clearly offered to prove the truth of the matter asserted and thus

---

[6]Don Chesney is a representative for Arbor Homes.

[7]Arbor asserts that "Chesney's testimony on this issue plainly relates to the reasonableness of Arbor's actions in June 2007 to mitigate its damages." [Docket No. 125 at 6.] However, reasonableness of notice is an issue of law for the Court to resolve once there is a determination that some sort of notice was received. *Mechs. Laundry & Supply, Inc. of Ind. S'holders Liquidating Trust v. Am. Cas. Co. of Reading, PA*, No. 1:04-CV-1122-DFH-TAB, 2007 WL 1021452, at *8 (S.D. Ind. Mar. 30, 2007) ("When the facts regarding the notice are undisputed, the issue of reasonableness is a question of law for the court."). As noted, there is no evidence of notice, and therefore Arbor's claim that Chesney's affidavit goes to reasonableness jumps the gun.

constitute inadmissible hearsay. . . . As such, they may not be relied upon to resist a motion for summary judgment."). Since nothing in the record suggests that West Bend was notified of the Lorches' claim prior to the settlement agreement, the voluntary-payments provision bars coverage. *See Travelers*, 953 N.E.2d at 1159 ("[I]t is apparent that where an insured enters into a settlement agreement without the insurer's consent in violation of a voluntary payment provision, that obligation cannot be recovered from the insurer . . . .").

Citing *Government Interinsurance Exchange v. City of Angola, Indiana*, 8 F. Supp. 2d 1120, 1135 (N.D. Ind. 1998), Arbor suggests that the settlement agreement was involuntary. [Docket No. 121 at 17.] In *Angola*, the court held that the voluntary-payments provision did not bar coverage because the clean-up costs expended by the city were required by state and federal environmental laws and therefore involuntary. *Id.* However, unlike *Angola*, Arbor's settlement agreement did not simply involve decontaminating the property to meet state or federal standards, but included buying the Lorches' home, constructing a new home, and covering costs associated with temporary relocation. *See Coils Anodizers, Inc. v. Wolverine Ins. Co.*, 327 N.W.2d 416, 418 (Mich. Ct. App. 1982) (compelling business circumstances do not make an insured's actions "any less voluntary" and deprive the insurer of its "bargained for . . . contractual right to contest the liability of its insured instead of having its money given away by an agreement to which it was not a party."). Furthermore, Arbor has not identified any state or federal law requiring decontamination, and therefore there is nothing in the record from which the Court can determine what steps, if any, taken by Arbor to decontaminate the home were required by law. *See Clarett v. Roberts*, 657 F.3d 664, 674 (7th Cir. 2011) (failing to cite legal authority and develop an argument results in wavier); *Harris v. SVC Mfg., Inc.*, No. 1:10-CV-

0078-LJM-DKL, 2011 WL 2516248, at *4 (S.D. Ind. June 22, 2011) ("[A] party opposing summary judgment waives claims to which it fails to . . . develop on summary judgment.").

Arbor also contends that the lack of notice was not prejudicial. [Docket No. 125 at 7–8.] While *Dreaded* and *Travelers* suggest that prejudice is irrelevant in certain situations, the parties agreed at oral argument that prejudice is relevant and that West Bend is entitled to a rebuttable presumption of prejudice. *See Crown Packaging*, 813 F. Supp. 2d at 1038 (setting forth the standard for prejudice). Even if the Court were to agree with the parties that prejudice is relevant in this case, Arbor has not rebutted the presumption.

Arbor contends that there is no prejudice because West Bend has maintained since October 12, 2007, that Arbor is not entitled to coverage or indemnification for its damages. [Docket No. 125 at 8.] Arbor, however, fails to account for the prejudicial effect of being excluded from the settlement negotiations in May and June of 2007, which settled with a very favorable outcome for the homeowners under the circumstances. Although West Bend has taken the post-settlement position that Arbor is not covered, that does not mean West Bend would have taken the same position if it had been notified of the claim and given an opportunity to resolve this unfortunate matter early on by participating in settlement discussions. *See Crown Packaging*, 813 F. Supp. 2d at 1033 (explaining that the purpose of the voluntary-payments provision is to give "the insurer the ability to control settlement negotiations with the injured party, and to prevent an [sic] the insured party from conspiring with a third party to receive benefits."). Even though Arbor asserts that nothing in the record suggests that West Bend would have resolved the claim differently if it had pre-settlement notice, the presumption is that West Bend was prejudiced by the lost opportunity, and it is Arbor's burden to come forward with

11

specific evidence to rebut this presumption. *See id.* at 1037–38 ("The insurer has to demonstrate prejudice only if the insured rebuts the presumption"). And post-settlement denial of coverage alone, even if that denial is based on other grounds, is insufficient to rebut the presumption. *Tri–Etch, Inc. v. Cincinnati Ins. Co.*, 909 N.E.2d 997, 1005 (Ind. 2009); *P.R. Mallory & Co., Inc. v. Am. Cas. Co. of Reading, PA.*, 920 N.E.2d 736, 754 (Ind. Ct. App. 2010). Accordingly, the voluntary-payments provision serves as an additional basis to grant West Bend's motion [Docket No. 113] for summary judgment.

**IV.     Conclusion**

For the reasons above, West Bend's motion for summary judgment [Docket No. 113] is granted. West Bend has no duty to indemnify or defend any of the entities involved, and Arbor's counterclaim necessarily fails as a result. A separate judgment shall issue accordingly.

Dated:  04/26/2012

_____
Tim A. Baker
United States Magistrate Judge
Southern District of Indiana

Copies to:

Thomas F. Bedsole
FROST BROWN TODD LLC
tbedsole@fbtlaw.com

Brian Michael Falcon
FROST BROWN TODD LLC
bfalcon@fbtlaw.com

James H. Milstone
KOPKA, PINKUS DOLIN & EADS, LLC
jhmilstone@kopkalaw.com

Mark R. Smith
SMITH FISHER MAAS & HOWARD, P.C.
msmith@smithfisher.com

Freedom Danielle Villa
SMITH FISHER MAAS & HOWARD P.C.
fmiller@smithfisher.com